RECORD NUMBER: 15-2130

# United States Court of Appeals

*for the*

# Fourth Circuit

SELECTIVE WAY INSURANCE COMPANY,

*Plaintiff/Appellant,*

– v. –

ROSEANNE BROWNING APPLE; EARL EUGENE HOAR;
BUILDING INDUSTRIES, INC.,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT CHARLOTTESVILLE

# BRIEF OF APPELLEES

JASON W. KONVICKA
ALLEN, ALLEN, ALLEN & ALLEN
1809 Staples Mill Road
P.O. Box 6855
Richmond, VA 23230
(804) 257-7528
*Counsel for Appellee Earl Hoar*

JOHN J. RASMUSSEN
INSURANCE RECOVERY LAW
GROUP, PLC
P.O. Box 8049
Richmond, VA 23223
(804) 308-1359
*Counsel for Appellee Earl Hoar*

MARC A. PERITZ
MORIN & BARKLEY LLP
455 2nd Street, SE, Suite 200
Charlottesville, VA 22902
(434) 293-1200
*Counsel for Appellee Roseanne
Apple and Building Industries, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-2130__        Caption: __Selective Way Insurance Co. v. Roseanne Apple, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Building Industries, Inc.; Roseanne Apple__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                          ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Marc A. Peritz                              Date:    October 8, 2015

Counsel for: Building Industries, Inc.; R. Apple

## CERTIFICATE OF SERVICE
**************************

I certify that on ___October 8, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Marc A. Peritz                              October 8, 2015
(signature)                                            (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.     Does party/amicus have any parent corporations?                    YES     NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                       YES     NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES        NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES        NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                              YES        NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                          _____
        (signature)                                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-2130__    Caption: __Selective Way Insurance Co v. Roseanne Apple, et. al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Progressive Gulf Ins. Co.__
(name of party/amicus)

_____

 who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
       If yes, identify all parent corporations, including all generations of parent corporations:
       Progressive Gulf Insurance Company is wholly-owned by Progressive Casualty Insurance
       Company (corporation) who in turn is wholly-owned by Drive Insurance Holdings, Inc. a
       sub-holding company.  The Progressive Corporation (a publicly traded holding company) is the
       ultimate owner of all entities.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Christopher L. Rathlev_____    Date: ____10/27/2015_____

Counsel for: _Progressive Gulf Ins. Co._____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____10/27/2015_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

*I certify that on 10/27/2015 I sent a copy of this
document to the Circuit Clerk Mediator to be filed
through the CM/ECF to be sent to all counsel of
record.

_/s/ Christopher L. Rathlev_____                _____10/27/2015_____
          (signature)                                          (date)

# TABLE OF CONTENTS

Corporate disclosure statements

Table of authorities ..................................................................iii

Statement of the issues presented for review ...............................1

Statement of the case ...............................................................2

    A. The Accident ..................................................................2

    B.　The Policy specifically lists the Town Car as a "covered auto"............2

    C.　Building Industries' interest in the Town Car.....................4

    D. Building Industries' consent to Roseanne's Town Car use ...............4

Standard of review ...................................................................5

Summary of argument ..............................................................5

Argument ...............................................................................7

    I.　Virginia's Omnibus Clause trumps any contrary policy terms to cover permissive users of vehicles for their associated liability..........7

        A.　Virginia requires policies issued on vehicles principally garaged or used in Virginia to cover those using the car with the named insured's express or implied consent ..........................7

    II. Selective's cited authority does not involve vehicles specifically listed in the Policy like the Town Car here...........................11

    III. The trial court correctly found that Building Industries had sufficient interest in the Town Car to consent to its use...................13

    IV. The trial court correctly found that Building Industries could and did consent to Roseanne's Town Car use at the time of the accident...........................................................................15

i

V. The trial court correctly found as a matter of law that the
Omnibus Clause covered Roseanne for her alleged liability to
Hoar stemming from the accident .................................................... 15

Conclusion ................................................................................................ 16

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*City of Norfolk v. Ingram,*
    367 S.E.2d 725 (Va. 1988)....................................................................7

*Elderberry of Weber City, LLC. v. Living Centers – Southeast, Inc.,*
    794 F.3d 406 (4th Cir. 2015)...............................................................5

*Emick v. Dairyland Ins. Co.,*
    519 F.2d 1317 (4th Cir. 1975)..............................................................7

*Fid. & Cas. Co. v. Harlow,*
    59 S.E.2d 279 (Va. 1950)....................................................................10

*GEICO v. Universal Underwriters Ins. Co.,*
    350 S.E.2d 612 (Va. 1986)....................................................................9

*Grange Mut. v. Criterion Ins. Co.,*
    188 S.E.2d 91 (Va. 1972) ...................................................................10

*Greenberg v. Commonwealth,*
    499 S.E.2d 266 (Va. 1998) ...................................................................9

*Haislip v Southern Heritage Ins. Co.,*
    492 S.E.2d 135 (Va. 1997) ...........................................................8, 10

*Hinton v. Indem. Ins. Co.,*
    8 S.E.2d 277 (Va. 1940)......................................................................10

*Jordan v. Shelby Mut. Plate Glass & Cas. Co.,*
    142 F.2d 52 (4th Cir. 1944) ...............................................................10

*Liverpool & London & Globe Ins. Co. v. Bolling,*
    10 S.E.2d 518 (Va. 1940) ...................................................................14

*Looney v. Commonwealth,*
    133 S.E. 753 (Va. 1926) .......................................................................9

iii

*Pham v. Hartford Fire Ins. Co.*,
   419 F.3d 286 (4th Cir. 2005) ....................................................... 11, 13

*Phipps v. Liddle*,
   593 S.E2d 193 (Va. 2004) ....................................................................9

*Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*,
   509 S.E.2d 307 (Va. 1999) ............................................................... 15

*Rothamel v. Fluvanna County*,
   810 F.Supp.2d 771 (W.D.Va. 2011) .....................................................9

*Seals v. Erie Ins. Exch.*,
   674 S.E.2d 860 (Va. 2009) ..................................................................9

*Stone v. Liberty Mut. Ins. Co.*,
   478 S.E.2d 883 (Va. 1996) ......................................................11, 12, 13

*Storm v. Nationwide Mut. Ins. Co.*,
   97 S.E.2d 759 (Va. 1957) .................................................................. 10

*Utica Mut. Ins. Co. v. Stegall*,
   293 F.Supp. 199 (W.D.Va. 1968)....................................................... 14

## Rules and Statutes

Va. Code § 38.2-2204 ...................................................................... 1

Va. Code § 38.2-2206 ..............................................................12, 13

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Virginia Code section 38.2-2204 (the "Omnibus Clause") extends liability coverage for Virginia-based policies to those who use a covered auto with the named insured's express or implied consent. Here, Building Industries, Inc. ("Building Industries") is the named insured for the policy that specifically lists the Town Car as a covered auto. It also funded that car, its upkeep, its insurance, and its gasoline.

Roseanne Apple, wife and mother of the two Building Industries owners (Clevius Apple and John Apple, respectively), was driving that Town Car when she collided with Eugene Hoar, the underlying plaintiff (the "Accident"). Roseanne shared title in the Town Car with Clevius.

The trial court found as a matter of fact that (1) Building Industries had a sufficient interest in the Town Car so it could consent to the Town Car's use by Roseanne, and (2) in fact, it did consent to such use.

Given those facts, does the Omnibus Clause extend liability coverage to Roseanne for the Accident?

1

## STATEMENT OF THE CASE

### A.    The Accident

Roseanne Apple was driving the Town Car on May 18, 2012 when involved in the Accident, which allegedly hurt the underlying plaintiff, Eugene Hoar.[1]

When the Accident happened, Clevius Apple was a passenger sitting next to Roseanne.[2] As detailed below, neither he nor John ever objected to Roseanne driving the Town Car.

### B.    The Policy specifically lists the Town Car as a "covered auto"

The parties stipulated that Selective issued a liability policy to the named insured, Building Industries.[3] That policy (the "Policy") listed the Town Car on its covered auto schedule and attributed a specific premium to it.[4] The Policy was in force when the Accident happened. [5]

---

[1] JA 1568
[2] JA 1568
[3] JA 1567
[4] JA 1567-68
[5] JA 27 *et seq.*

2

Selective's agent encouraged Clevius to insure the Town Car and his other vehicles under a single Selective policy.[6] The Policy quote sheet lists the Town Car and three other vehicles.[7] The parties stipulated that the Town Car is principally garaged and used in the Commonwealth.[8]

The Town Car is titled to Clevius and Roseanne, both citizens of the Commonwealth of Virginia.[9] Clevius titled the listed vehicles in his and his wife's name because he believed that it would be difficult to finance vehicles owned by a small corporation.[10]

Selective's agent did not ask Clevius about the Town Car's titling or the title for the other three vehicles listed on the Policy.[11] When Building Industries purchased the Policy, Clevius "believed that, and intended for, the Policy to provide coverage for himself, [Roseanne], and John whenever they drove the Town Car."[12]

---

[6] JA 1145
[7] JA 1030
[8] JA 1568
[9] JA 1568
[10] JA 346:14-347:18
[11] JA 457: 11-15; JA 350: 6-11, 1154
[12] JA 350: 6-11, 1154

### C.    Building Industries' interest in the Town Car

Building Industries regularly used the Town Car as a business vehicle.[13] It also derived economic benefit from its use.[14] In fact, Building Industries provided the funds to pay for the Town Car, as well as funding its upkeep, insurance premiums, and gasoline.[15]

### D.    Building Industries' consent to Roseanne's Town Car use

Building Industries and the Apples all understood that the business could possess and control the Town Car.[16] In addition to using it for company business, Roseanne regularly used the Town Car as a personal vehicle.[17] The Apples and Building Industries knew this, and no person objected to that use.[18]

---

[13] JA 274:4-275:2, 1139-42, 1201-02, 1204
[14] JA 274:4-275:2, 1143-44, 1201, 1204
[15] JA 357:8-14,1143, 1198
[16] JA 263:7-264:1, JA 1139-42, 1160, 1199, 1202
[17] JA 274:4-275:2
[18] JA 317:7-9, 1142-43, 1152-53, 1196-97, 1208-09

## STANDARD OF REVIEW

This Court reviews a district court's judgment entered after a bench trial under a mixed standard of review. Under this standard, it reviews the trial court's findings of fact for clear error, and it reviews conclusions of law *de novo*. *Elderberry of Weber City, LLC. v. Living Centers – Southeast, Inc.*, 794 F.3d 406, 411 (4th Cir. 2015).

## SUMMARY OF ARGUMENT

The Omnibus Clause extends liability coverage to those who drive Virginia vehicles with the named insured's consent. It is well settled that the Omnibus Clause is a remedial statute, construed broadly in order to accomplish the statute's goal of extending motor vehicle liability coverage to permissive users.

The Omnibus Clause does not require a named insured to own the car at issue in order to provide such consent. Rather, the Omnibus Clause merely requires the named insured to be positioned to provide consent. Here, the trial court found under settled Virginia law that Building Industries could and did consent to Roseanne using the Town Car.

5

In trying to dodge providing coverage, Selective argues that a non-owner cannot consent to an owner's use. But the authorities that Selective cited in its brief starkly differ from the facts here. *First*, Building Industries' Policy specifically lists the Town Car as a covered auto. There is no dispute that Selective agreed to insure the Town Car in exchange for a specific premium, which it accepted, even though the Town Car was titled to Clevius and Roseanne and the Policy's quote sheet listed Roseanne as a driver. *Second*, Building Industries paid for the Town Car, its insurance premiums, its upkeep, and its gasoline. Based upon its factual findings, the trial court held that Building Industries *was* in a position to consent to Roseanne using the Town Car, and that it did, in fact, provide such consent. With those facts established, the trial court correctly found that the Omnibus Clause mandated liability coverage for Roseanne while using the Town Car.

## ARGUMENT

### I. Virginia's Omnibus Clause trumps any contrary policy terms to cover permissive users of vehicles for their associated liability

The Omnibus Clause extends liability coverage to anyone using a covered auto with the named insured's consent, regardless of the policy terms. That clause's plain text shows the legislature's intent to grant permissive users such coverage. *City of Norfolk v. Ingram*, 367 S.E.2d 725, 727 (Va. 1988).

#### A. Virginia requires policies issued on vehicles principally garaged or used in Virginia to cover those using the car with the named insured's express or implied consent

Court's construe the Omnibus Clause – a remedial statute – to broaden coverage and protect those who use Virginia highways. *Emick v. Dairyland Ins. Co.*, 519 F.2d 1317, 1321 (4th Cir. 1975). That statute applies to any policy delivered in the Commonwealth or issued by a Virginia-licensed insurer that covers a vehicle principally garaged and used in Virginia. Nobody disputes that the Policy falls within that statute's scope.

The statute's relevant part provides: "[n]o policy ... of bodily injury ... liability insurance, covering liability arising from the

ownership, maintenance, or use of any motor vehicle... shall be issued or delivered in this Commonwealth to the owner of such vehicle ... or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle ... that is principally garaged ... or used in this Commonwealth, unless the policy contains a provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle ... with the expressed or implied consent of the named insured, against liability for ... injury sustained, or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle ... by the named insured or by any such person ..."

As shown above, nothing in the Omnibus Clause's plain text limits its mandate to cover permissive users only to policies with individuals or a husband and wife as named insured. And nothing in that clause bars the named insured from consenting to an owner using a listed vehicle. *See Haislip v Southern Heritage Ins. Co.*, 492 S.E.2d 135, 1737 (Va. 1997)(applying the statute's plain text).

The Omnibus Clause uses two different terms to describe whose consent can expand coverage:  "named insured" and "custodian." "When the General Assembly uses two different terms in the same

act, it is presumed to mean two different things." *Greenberg v. Commonwealth*, 499 S.E.2d 266, 270 (Va. 1998). That interpretive principle dooms Selective's "custodian" argument here.

Beyond that, if a "named insured's consent only extended liability coverage to permissive users in connection with auto policies issued to individuals, or a husband and wife, Virginia's General Assembly could have put that limit in the text. " It did not do so. We do not assume that the omission was inadvertent. Rather, we conclude that the legislature was consciously and deliberately selective." *Seals v. Erie Ins. Exch.*, 674 S.E.2d 860, 863 (Va. 2009)(*quoting GEICO v. Universal Underwriters Ins. Co.,* 350 S.E.2d 612, 614 (Va. 1986).

Moreover, limiting the Omnibus Clause to policies that include an individual or husband and wife would render the above-quoted text meaningless. And every word in a statute should have effect, if at all possible. *Looney v. Commonwealth*, 133 S.E. 753, 755 (Va. 1926); *see Phipps v. Liddle*, 593 S.E2d 193, 195 (Va. 2004). *Rothamel v. Fluvanna County*, 810 F.Supp.2d 771, 782 (W.D.Va. 2011)(holding that "no clause, sentence, or word shall be superfluous, void, or insignificant").

9

In this case, any Policy provision that conflicts with the Omnibus Clause is void and replaced by the statute. *Jordan v. Shelby Mut. Plate Glass & Cas. Co.* 142 F.2d 52, 57 (4th Cir. 1944)(The "omnibus clause statute, as remedial legislation, must be liberally interpreted to … broaden the coverage of automobile-liability policies."). *See Haislip v. Southern Heritage Ins. Co.*, 492 S.E.2d 135, 137 (Va. 1997), *citing Grange Mut. v. Criterion Ins. Co.*, 188 S.E.2d 91, 93 (Va. 1972). *Storm v. Nationwide Mut. Ins. Co.*, 97 S.E.2d 759, 762 (Va. 1957).

Consent by the named insured may be implied. Implied consent arises from a course of conduct between parties with mutual acquiescence or lack of objection under circumstances signifying assent. "[P]ermission is not, therefore, confined alone to affirmative action." *Hinton v. Indem. Ins. Co.*, 8 S.E.2d 277, 283 (Va. 1940).

Indeed, the Supreme Court of Virginia has stated that in "defining 'implied permission,' and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance companies liable." *Fid. & Cas. Co. v. Harlow*, 59 S.E.2d 279, 283 (Va. 1950).

10

The Supreme Court of Virginia has further stated that even if the named insured does not own the insured vehicle at issue, the Omnibus Clause extends coverage to permissive users when the named insured has such an interest that it is entitled to control and possess the vehicle and in a position to give such permission. *Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883, 886 (Va. 1996).

## II.    Selective's cited authority does not involve vehicles specifically listed in the Policy like the Town Car here

Selective points to cases like *Pham v. Hartford Fire Ins. Co.*, 419 F.3d 286, 291 (4th Cir. 2005) to press its position that non-owners cannot consent to a vehicle's use by an owner. That case and the others, however, did not involve a policy (like the one here) that specifically listed the vehicle at issue as a covered auto, or one in which the named insured – who was not the vehicle's owner – contributed to the purchase, maintenance, and insurance premiums of the vehicle. Nor did the *Pham* insurer that issued the *Pham* policy have specific information that the employee routinely drove the vehicle.

In *Pham*, an employee who was driving his own vehicle killed someone while that employee drove some coworkers home after a

11

night carousing at a local pub. His employer had a policy that covered company vehicles. But the company did not allow employees to use company vehicles for social purposes. The injured plaintiffs argued that the Omnibus Clause provided coverage under the employer's policy, but the Supreme Court disagreed because the policy did not list the employee's vehicle.

Selective also relies heavily upon *Stone v. Liberty Mut. Ins. Co.*, a case that involved an uninsured-underinsured motorist endorsement to an insurance policy. *Id.* at 13. In *Stone*, a part-time pizza deliveryman was involved in a collision while he was delivering pizza in his personal vehicle. The pizza spot had a "Business Auto" policy, and the employee sought coverage under the uninsured motorist provision of that policy under Code § 38.2-2206.

The court began its analysis looking to Virginia Code § 38.2-2206, noting that the statute "is meant to protect an insured motorist, his family and permissive users of his vehicle against the peril of injury by an uninsured wrongdoer," not to provide "insurance coverage upon each and every uninsured vehicle to everyone." *Id.* at 17.

With that background, the court held that the employee was not an "insured" for the purposes of Code § 38.2-2206 because the policy did not list the employee's vehicle. *Id.* at 18. Unlike here, nothing in the record suggested that the employer funded the vehicle, its insurance, and its upkeep, including gasoline. *Id.*

*Pham* and *Stone* present different facts than this case. Here, Selective's agent advised Clevius to cover the Town Car under the Building Industries' policy, and not under any other policy. Selective then provided the Policy, in exchange for premiums paid by Building Industries, even though that company did not hold title to the Town Car. In doing so, Selective acknowledged that Building Industries had the right to use the Town Car, and to consent to its use by others. If the Policy did not cover the use of the Town Car, what did Building Industries pay for?

### III. The trial court correctly found that Building Industries had sufficient interest in the Town Car to consent to its use

A person has an "insurable interest" if that person has a sufficient interest in property, or if the person would suffer pecuniary

loss if the property is damaged. *Liverpool & London & Globe Ins. Co. v. Bolling*, 10 S.E.2d 518, 521 (Va. 1940).

The trial court correctly found that Building Industries had an interest in the Town Car because the Town Car furthered Building Industries' business performing the company's work, and because Building Industries paid for the Town Car and its use.[19] Under these facts, Building Industries has sufficient interest in the Town Car to consent to its use.

Indeed, Selective presents no legal basis to suggest the Omnibus Clause cannot apply to a car specifically listed in the Policy if it is not owned by the named insured. Ownership is simply one way to show an interest. The "term registered owner is not synonymous with the term sole owner." *Utica Mut. Ins. Co. v. Stegall*, 293 F.Supp. 199, 201 (W.D.Va. 1968).

---

[19] JA 1576

### IV. The trial court correctly found that Building Industries could and did consent to Roseanne's Town Car use at the time of the accident

Corporations (like Building Industries) act through their agents. *Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 509 S.E.2d 307, 320 (Va. 1999).

Here, the trial court found that Clevius and John were agents of Building Industries, and that they both consented to Roseanne's use of the Town Car. The trial court found that "Building Industries had an interest in the Town Car such that it was entitled to possession and control of the vehicle, was positioned to give [Roseanne] permission to use the vehicle for personal use, and in fact implicitly consented to [her] use of the vehicle."[20]

### V. The trial court correctly found as a matter of law that the Omnibus Clause covered Roseanne for her alleged liability to Hoar stemming from the accident

Based on the above authority and factual findings, the trial court correctly held as a matter of law that Selective owed a duty to defend Roseanne against claims by Hoar arising from the accident.[21]

---

[20] JA 1576
[21] JA 1576-77

Selective argues that (1) only the named insured can give permission under the Omnibus Clause; but (2) Building Industries cannot give anyone permission to use the Town Car because it has no title to that auto. That absurd result renders the Policy illusory and defeats the intent behind the remedial Omnibus Clause.

## CONCLUSION

As shown above, the Omnibus Clause extends the Policy's liability coverage to Roseanne connected with the Accident. Building Industries, the named insured, had such an interest in the Town Car to put it in a position to give express or implied permission for Roseanne to use it, and Building Industries provided such consent through its agents. Particularly given the broad construction Virginia law affords the Omnibus Clause, the trial court correctly ruled that clause applied here. And that factual finding need only pass the "clear error" standard. Selective has not attacked the trial court's factual findings under that standard.

Hence, Hoar, Building Industries, and Roseanne Apple respectfully ask this Court to affirm the trial court's judgment.

16

Respectfully Submitted,

/s/ John J. Rasmussen
John J. Rasmussen
INSURANCE RECOVERY LAW GROUP, PLC
P.O. Box 8049
Richmond, VA 23223
(804) 308-1359
*Counsel for Appellee Earl Hoar*

/s/ Marc A. Peritz
Marc A. Peritz
MORIN & BARKLEY LLP
455 2nd Street, SE, Suite 200
Charlottesville, VA 22902
(434) 293-1200
*Counsel for Appellee Roseanne Apple and Building Industries, Inc.*

Jason W. Konvicka
ALLEN, ALLEN, ALLEN & ALLEN
1809 Staples Mill Road
P.O. Box 6855
Richmond, VA 23230
(804) 257-7528
*Counsel for Appellee Earl Hoar*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 15-2130         **Caption:** Selective Way Ins. Co. v. Roseanne Apple, et al.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑  this brief contains _____2,899_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑  this brief has been prepared in a proportionally spaced typeface using
   MS Word 2010 _____ [*identify word processing program*] in
   Georgia, 14 point _____ [*identify font size and type style*]; **or**

   ☐  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) John J. Rasmussen _____

Attorney for appellee _____

Dated: 4/21/16 _____

# CERTIFICATE OF SERVICE

I certify that on <u>4/21/16</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Melissa Walker Robinson
Johneal M. White
GLENN ROBINSON & CATHEY
400 Salem Avenue, Suite 100
Roanoke, VA 24016-0000
540-685-0307
mrobinson@glennrob.com
jwhite@glennrob.com

| /s/ John J. Rasmussen | 4/21/16 |
|---|---|
| Signature | Date |